Let's proceed with the next case, Senate 9, Weber v. Mitsui Sumitomo Marine Management. I think I'm presiding so that my senior colleagues could see if I could pronounce that party's name. I hope I did okay. Good morning, Your Honors, and may it please the Court, Mr. McVisk, this case comes before this Court from Richland County, from Albany, Illinois. It involves a question involving underinsured motorist coverage at the trial court level. Competing motions for summary judgment were filed and were ruled on by the Court, and it appears that this case is before this Court on a no vote standard. So factually, and I'll try and be brief on this point, the plaintiff, my client, is rear-ended back in 2011. The underlying case with the at-fault driver is settled with the knowledge, consent, and approval of Mitsui. The policy limit, the $50,000 policy limit, is recovered from the at-fault driver and is essentially tenured to Mitsui in satisfaction, or I suppose I'm just saying partial satisfaction, of its workers' compensation lien. It is unique in this particular case, and I suppose every case is unique in certain respects, but in this case, Mitsui is the underinsured motorist carrier and is also the workers' compensation carrier for the employer of my client, and at the time my client was in this automobile collision, he was in a company car on company business, so there's a workers' comp aspect to this factual situation. So the Mitsui underinsured motorist endorsement coverage, a caveat which is, of course, in the brief, contains a $1 million policy limit. There are two issues that we bring before the court this morning. The first issue involves a credit issue. The policy, the endorsement, contains language, two areas of language, which we believe are internally inconsistent and therefore ambiguous and therefore should be construed in favor of the insured. The first one being under the exclusion section, the endorsement says that this insurance, specifically this underinsured motorist insurance, does not apply to any of the following. Number one, the direct or indirect benefit of any insurer under any workers' compensation disability benefits or similar law. What does that mean? Tell us what you believe that provision standing by itself means. It's an exclusion. It means they're not going to pay for that. Well, it is an exclusion, correct. Of course, I didn't write it. That's why it was construed against the insurance company. So you're asking me what I think it means. And of course, Your Honor, there's a distinction and a difference between a lien and a credit. And the law, and I don't think it's in dispute, Mr. McViscum can voice his opinion if he disagrees with me, but I don't think he will. There's no dispute, but under Illinois law, the workers' compensation lien cannot attach to an underinsured motorist claim. However, there is Supreme Court precedent that the limit of liability under uninsured motorists can be reduced by workers' comp payments. Is that correct? Oh, yeah. You agree with that? I agree. Sure, sure, sure. So whether you call it a lien or credit or whatever, it's a reduction of the limits of liability. I mean, you raise a different issue here, but just standing alone, I believe the Illinois Supreme Court has said an insurer can write a policy such that the limits of liability for underinsured motorists can be reduced by payments made through workers' comp. Sure. Okay. And that's exactly what this endorsement goes on to say. I hate to speak this broadly, but I'll risk it. I think that's probably, if not standard, all but standard in these sorts of endorsements, underinsured endorsements, which plays to a certain extent into the second argument we raised, which has to do with assuming, for a second, credits are to be applied, then the question, at least from our perspective, is applied against what? And I acknowledge, as Mr. McVix points out in his brief, that there is language in cases, including at least one Illinois Supreme Court case, which talks about generally that the general concept of underinsured coverage is to essentially fill in the gap between the policy limit provided by the underinsured and the policy limit provided by the at-fault driver. I think, if I can be somewhat bold, I think that that's maybe an oversimplification of a situation in this particular case, or in any case, where the damage award, the amount, or arbitration award exceeds the policy limit, because in this case, and apparently in other similar of the endorsement, we, Mitsui, will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an underinsured motor vehicle, period. So if the award, and as the Court knows, but let me just say so that we're all, you know, the arbitration award has not yet been made. So as I stand here before this Court this morning, I don't know, in open notes, whether the award will be more than or less than the policy limit. Okay. And that was the case, and the trial court, in its opinion, addressed that thing. The Court addressed different hypothetical possibilities, more equal or less, but it's more possibility that I'm talking about this morning. If the award is more than, and there are fairly significant injuries here. It's not craziness to suggest that it could be. If the award is more than the underinsured policy limit, and if this Court disagrees our position with regard to the credits, in other words, this Court finds that credits will be applied against something, the question being the million-dollar policy limit or the hypothetical award of something more than a million dollars. Then, I mean, that's, those are the two possibilities. So first of all, I believe that this policy language that I read a minute ago suggests that it should be applied against the arbitration award, which is, would be the, all sums insured legally entitlement recovers compensatory damage. And then, and I know Mr. McFisk disagrees, but we cite this McKinney case, which, which sadly isn't a Fifth District case, but it is an Illinois Teleport case, which says, quote, we hold the coverage for the UIM policy in this case is available for that margin between the amount received by McKinney from the underinsured and the actual damages he's entitled to recover. So, obviously, if this Court were to agree with me on the first point, then that kind of moves to the second point because there's no credit issue. But if the Court disagrees with me on the first point, then I think the second point comes into play. I suppose it's entirely possible that because of the significance of the injuries, if the workers' compensation paid could eat up the entire remaining $950,000. Well, let me suggest this to the Court, that although it had not been resolved at the time before the trial court, the workers' compensation claim has now been resolved. Okay. Those numbers are, that number is fixed. Okay. Okay. Thank you, Counselor. Thank you, Your Honor. Argument for the advocate. Thank you, Your Honor. May it please the Court. My name is William McFisk, and I'm representing Mitsui Sumitomo Insurance Group. I'm not even sure I got that name right. Mitsui. We'll call him Mitsui if it's all right with you. Your Honors, as I was preparing for the argument and reading through the cases one more time, I think what is clear, if you read all the cases dealing with underinsured and uninsured motorist coverage in Illinois, they all have the same thing. Whenever they are interpreting a policy, whenever they're interpreting the statute, they all come back to the same thing, namely that underinsured motorist coverage is designed to fill the gap. It is designed to make the insured in the same position they would have been in if they had liability coverage equal to the limits of the underinsured motorist limits. So, that's what the Supreme Court of Illinois has said in Sussler.  They said that the purpose is to place the insured in the same position he would have been in if the tortfeasor had carried adequate insurance coverage. That's how they interpret underinsured motorist policies. That's how they've interpreted the statute. What would have happened in this case if the driver who hit Mr. Weber had a million dollars in coverage? The answer is very simple. If Mr. Weber had a million and a half dollars worth of damages and had a $500,000 workers compensation payment, the insurance policy would have paid a million bucks. By half of that million dollars, the $500,000 would be paid to the workers compensation carrier by a lien. So, Mr. Weber would have received not a million and a half dollars, which were his total damages, not a million dollars from the workers comp for the underinsured motorist carrier plus another half a million from the workers comp. He would have received $500,000 from the underinsured motorist and a half million from the workers comp. We have a little kind of unique situation here in that Mitsui is not only the underinsured insurer, but also the workers comp insurer. That's true. And does that mean anything? That should be made clear. So, basically, Mitsui pays itself for its workers comp. Well, and the thing is, of course, if instead Mitsui were the liability insurer, that is what would have happened. The liability insurer, Mitsui, would have paid itself, its workers compensation policy, a half a million dollars, and it would have paid Mr. Weber a half million dollars. It really doesn't make any difference. I mean, they're two separate policies. The workers comp and the underinsured motorist are two separate policies. Now, the language of this policy is also very clear. The language doesn't say what the language said in the McKinney case, that the amount payable will be reduced by the underinsured motorist or by the workers comp. I'm going to get this mixed up, and I apologize. It doesn't say that the amount payable under the underinsured motorist coverage and all the sums that we owe you has to be reduced by the workers compensation payment. It says the limits of this coverage will be reduced by the amounts paid by any workers compensation carrier. It couldn't be more clear. And if you read that provision, that's the end of the case. That's all that you need to know, because you deduct from the limits of coverage what the workers compensation payments were. Mr. Weber and Mr. Clark tried to turn this around on us by saying, oh, we have a latent ambiguity because Mitsui is, in fact, the workers compensation carrier. So therefore, you have to look at that exclusion, which says that what it says about the benefit we want, it doesn't apply to workers compensation benefits. And I'm going to ask you the same question. What does that mean, that exclusion? Well, I thought about that one night. I think there are two possible reasons. We make these decisions. We talk about the plain language of the insurance policy. I appreciate that. First of all, I think the plain language says it's an exclusion. It isn't adding to the coverage. In other words, it's something this company, Mitsui, will not pay. We won't pay. We won't pay. So we're not going to add to the coverage. What it won't pay is workers compensation benefits. So if you've been compensated for your injury by workers compensation benefits, we won't pay that. The only other potential way I can read that is we're not going to pay directly to a workers compensation insurer for their lien. Okay. And Mitsui is the workers company. Right. But we're not asking them to. Because, of course, what all they're saying is we're not going to pay for the workers compensation part. That doesn't say we aren't going to reduce our limits. If you read it the way Mr. Clark suggests, it would effectively make that section of the policy which says our limits will be reduced by workers compensation payments meaningless. Most of the case law about ambiguities in motor vehicle insurance policies deal with itself. And, of course, I read your briefs and everything. But I don't recall a specific case where it dealt with an ambiguity within the policy itself. Two different provisions like exclusions. I don't remember any cases like that. I mean, starting with motor versus country mutual and the Illinois Supreme Court and ambiguities between the deck sheet. Right. But I think one of the things, I mean, and I haven't seen a single case in Illinois or anywhere else which interprets an exclusion as expanding coverage. In fact, the Illinois Supreme Court has made it clear and this court and all the Illinois flood courts have made it clear. You can't read an exclusion as expanding coverage. So if an exclusion isn't going to expand coverage, then you can't read it as saying, oh, this provision where our limits are reduced by this, we're going to ignore that provision because that would effectively make our limits more than what they otherwise would be. Exclusions don't expand coverage. They take away coverage. So, and we're not paying Mitsui, the workers' compensation carrier, anything. What we're doing is we're just not paying Mr. Clark, I mean, sorry, not Mr. Clark, Mr. Weber, for his, for damages in excess of a million dollars and we take off the million dollars, the amount of money he got from his workers' compensation carrier. And I don't see that there's any ambiguity in that policy, latent or otherwise, with respect to that. So let me try to rephrase here. So what you would say is that reducing the limits payable to Mr. Weber does not then pay for a direct or indirect benefit to the workers' comp insurer. The workers' comp insurer had to pay. Right. Workers' compensation insurer has paid. Right. So it's not going to benefit the workers' compensation insurer. We're not going to take the money that we're giving to Mr. Weber and give it to the workers' compensation carrier under that policy. What we're doing is reducing, we're reducing the limits of this coverage just like this policy says it's supposed to do. And any other construction is going to read out the fact, I mean, because, you know, this policy was written. We have a workers' compensation carrier who is the auto insurer, so that would basically say in this situation, ignore that provision with respect to our limits. And this court has repeatedly said you can't adopt a construction of an insurance policy which ignores or renders meaningless a provision of an insurance policy. So I, Your Honors, I think the case law is clear. This has filled the gap coverage. Filling the gap here means you take it from the amount the workers' compensation carrier paid up to the limit of the policy. That's exactly what would happen if Mitsui had been the liability insurer because in that case, yeah, you would actually benefit the workers' compensation carrier because they paid a lien. But the net result to Mr. Weber is still the same. He's going to get fresh money after workers' compensation, the difference between the workers' comp and the million-dollar limits. That's what filled the gap coverage is, and that's what the policy calls for because the policy says the limits of insurance must be reduced by payments under workers' compensation. Your Honors, I think the policy is clear. I think the policy of the State of Illinois is clear. The policy of this, the courts have said about this being filled the gap coverage is clear, that the interpretation of this policy should be that the limits are reduced by the amounts paid to the workers' compensation, by the workers' compensation carrier, and we therefore would respectfully request that you affirm the law report. Thank you. Thank you, Counselor. Reba, what are you doing? I'd be happy to answer any questions that anyone in the room has before they ask. Thank you.